## Omwake, Appellant, *v.* Harbaugh.

*Sheriff's sale—Distribution—Inconsistent claims on fund.*

One who has claimed and received payment as a lien creditor out of the funds realized by a sheriff's sale of real estate, will not be permitted subsequently to assert that he was the equitable owner of the premises as a vendee under articles of sale. The two positions are entirely inconsistent, and having assumed the first, he is estopped from setting up a claim to consideration in the second.

Argued March 9, 1892. Appeal, No. 106, Jan. T., 1892, by W. T. Omwake, from decree of C. P. Franklin Co., Dec. T., 1890, No. 14, distributing proceeds of sheriff's sale of real estate of F. A. Harbaugh. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Claim presented before auditor appointed to distribute proceeds of sheriff's sale.

The auditor, W. J. Zacharias, Esq., found the following facts: F. A. Harbaugh and wife, on Jan. 8, 1890, by articles of agreement, sold part of their real estate to W. S. Omwake for $1,500, who, as part of the purchase money, was to take up two executions against Harbaugh, and to apply the balance to the remaining liens against the property. A deed was to be executed April 1, 1890. Omwake took up the two judgments, on which executions had issued, and had them assigned to himself; he also took up other judgments, amounting in all to over $1,900, against the property. But when Omwake requested Harbaugh to make the deed, he declined, on the ground that his wife refused to join in it. Subsequently, on Nov. 28, 1890, the property of Harbaugh was sold by other judgment creditors, and realized a surplus of $569.63, after paying all liens

upon the lot purchased by Omwake. Omwake claimed this surplus as the equitable owner of the lot; he also claimed before the auditor upon four judgments assigned to him, and as judgment creditor was paid in full out of the proceeds of the land sold.

The auditor awarded to Omwake the surplus as the equitable owner of the land. Exceptions were filed to this finding by Harbaugh. These exceptions were sustained by the court, STEWART, P. J., in an opinion which was, in part, as follows:

" There is no finding by the auditor which impeaches the good faith of Harbaugh. He finds (14th finding) that ' he (Harbaugh) declined to give said Omwake a good, sufficient and marketable title to the premises covered by the article of agreement, assigning as a reason that his wife Catharine Harbaugh would not join in the deed. Catharine Harbaugh at that time, and ever since also refused to join in a deed to Omwake for the premises.'

" If this finding be in any degree equivocal with respect to the actual cause of Harbaugh's default, there is no reason discoverable from the evidence why it should be. But whether equivocal or not, there is at least no finding by the auditor that the default resulted from anything but the wife's refusal, nor does he find that the husband was in any way responsible for that. We are bound to assume, in the absence of any finding to the contrary, that when Harbaugh assigned as the reason of his failure his wife's refusal, he was speaking the truth. With Harbaugh then unable to keep his covenant because of his wife's unwillingness to join in the deed, what was the position of the parties with respect to this contract of sale? Here was a demand for compliance by a vendee who stood ready and willing to fulfill his part, and a vendor who, without fault of his, found it impossible to do what he had promised. What remedies were open to the vendee? Specific performance of the contract he could not have. The most that could have been required of Harbaugh by a court of equity would have been a deed for the property with the wife's inchoate right of dower fastened thereon. But this would not have been a specific performance of the contract into which he had entered, for he had bargained for a title which would carry with it all the wife's rights. Nor would he have been allowed any abate-

ment from the price he agreed to pay, on account of the wife's dower remaining. For such partial performance of the contract the full price would have been exacted. If authority is needed for so plain a proposition it may be found in Clark v. Sierer, 7 Watts, 107 ; Riesz's Ap., 73 Pa. 485, and the cases therein referred to."

After discussing the authorities (Bitner v. Brough, 11 Pa. 139 ; Burk v. Serrill, 80 Pa. 418 ; Mathews v. Sharp, 99 Pa. 563) he continued :

" In the present case, Mr. Omwake had paid no part of the purchase money. True he had invested in certain liens upon the property. These he had assigned to himself, but his investment was returned to him with interest. All the liens were paid out of the proceeds of sheriff's sale. He had incurred no expense, and therefore stands in no need of indemnity. In a suit at law he would be entitled to nominal damages only. In a suit in equity, as we have seen, he would have recovered less than his bargain, and less than he would have been willing to accept without such suit. On what ground, then, can it be said that he is entitled to the excess of the purchase money over and above the liens, or to any part of it ? To give it to him would be to pay him for the loss of his bargain, for this excess, that is to say, $569.63, is the difference between his contract price and what the property sold for. He would thus be allowed to work out, through a sheriff's sale, a result which neither law nor equity would accord him were he a suitor before either.

" But, it is said, that under the article of agreement he became the equitable owner of the property that was subsequently sold by the sheriff, and that Harbaugh held the legal title thereto simply in trust for him. To this it may be replied that he was the equitable owner to this extent, that equity would decree a performance of the contract in his behalf so far as the vendor could comply therewith ; that is to say, would compel Harbaugh to convey him the property subject to the wife's rights therein. His rights as equitable owner lay within these limits. Now this he did not want, and would not have. The vendor having stated his inability to fulfill his covenants as written, and the vendee virtually refusing to accept or allow any diminution thereof, the equitable relation

may well be considered as ended, and the whole matter resolved into a question of damages. 'On the other hand,' says GIB-SON, C. J., in Clark v. Sierer, supra, 'if the vendee consent to take such title as the husband can give him, it is agreed the coverture will not stand in the way of performance. But thus far entitling himself to it by performance of his own part, he must professedly go for no more. If he tender the price, demanding an entire execution of the contract, it may be rejected for having been tendered on a condition he is not entitled to enforce.'

"Siter, James & Co.'s Appeal, 26 Pa. 180, which has been urged upon our attention, is not a case in point. There the vendee was held entitled to the excess realized at the sheriff's sale, but it was because the vendor was in fault, and his inability to convey was chargeable to his own conduct. It was a case of impossibilitas facti; in the case we are considering it was impossibilitas rei. In the one the impossibility consisted in the inability of the party to do it, resulting from his own conduct; in the other the inability consisted in the nature of the thing to be done, to wit, the conveyance of the wife's interest in the land against her consent by somebody other than herself. The distinction is too apparent to require argument. So too in Frick's Appeal, 101 Pa. 488, the excess was awarded to the vendee under articles, but it was under a like state of facts as we have in the case last above mentioned.

In neither case were there any equitable considerations operating in relief of the vendor; but, in both, the whole responsibility for the failure rested upon him. Here we have as the cause of failure the refusal of a third party, whose assent the vendee knew, when he entered into the contract, to be essential and beyond the power of the vendor to control. He assumed the risk of her refusal to this extent at least, that in such event he would forego all damages except such as would be compensatory. These he has had, and he is entitled to no more. The exceptions to the auditor's report so far as they relate to the distribution to W. T. Omwake, Esq., are therefore sustained, and the report of the auditor is set aside.

"And now, Oct. 26, 1891, it is ordered, adjudged and decreed that the entire balance of the fund for distribution in the hands of the sheriff, to wit, the sum of $697.01, be paid over to F. A. Harbaugh."

*Errors assigned* were (1) not affirming the conclusion of the auditor that Omwake was equitable owner of the property, and (2) that he was therefore entitled to receive the surplus in the hands of the sheriff; (3) sustaining the exceptions to the auditor's report and setting aside the report; (4) awarding the balance to Harbaugh; and (5) failing to confirm the report of the auditor.

*O. C. Bowers*, for appellant.

*Thad. M. Mahon, Linn Harbaugh* with him, for appellee.

PER CURIAM, March 28, 1892:

The plaintiff claims to be the equitable owner of the lot sold by the sheriff, and as such entitled to the surplus of the purchase money over and above the amount necessary to discharge the liens. Unfortunately for him, it appears that he claimed as lien creditor, and was allowed the amount of judgments which he held against the property. This claim is entirely inconsistent with his claim as owner of the premises. It needs no argument to show that he cannot claim in the dual character of both owner and lien creditor. Having claimed in the latter capacity, and his claims having been allowed out of the proceeds of the sale, he cannot now claim the balance of the proceeds of the sale as owner by virtue of his equitable title.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.